.S. W. LITTLE ET AL., APPELLEES, V. EZEKIEL GILES ET
AL., APPELLANTS.

[FILED JULY 11, 1889.]

1. **Parties.** Where an action was instituted in behalf of a large
number of plaintiffs, by name, for the purpose of enjoining a
common defendant from prosecuting actions involving their
title to real estate, and a portion of the persons whose names
were used as plaintiffs gave to the defendant an instrument in
writing, that the suit had been instituted without their knowl-
edge or consent, that they repudiated the action of the attorneys
who instituted it, and did not desire it further prosecuted, but
upon further inquiry became satisfied with the action of the
attorneys, ratified it, and employed them to proceed with the
case in their names, in connection with the names of those who
did not disaffirm, appeared upon the trial as plaintiffs, and par-
ticipated therein as litigants and witnesses, explaining that the
writing was given under a misapprehension on their part, and a
decree or judgment was rendered upon the merits of the case;
such judgment will not be held void nor erroneous as to those
never having been dismissed nor stricken from the record as
plaintiffs by the trial court.

2. ———: DISCLAIMER. But when such disclaimer is made and
filed in the case, and no further action is taken by the party
as a plaintiff, such statement and disclaimer, being his last ex-
pression concerning the action or its prosecution, it will be
treated as a final repudiation of the suit by such party, and a
decree of the district court affecting his rights or those of the
defendant as to him will be set aside.

FURTHER consideration of case reported in 25 Neb., 313.

REESE, CH. J.

This case was decided at the January, 1889, term of this court, and is reported in 25 Neb., 313. The legal questions involved in the case were disposed of by that decision; but it appearing on the record that a portion of the plaintiffs named in the petition had signed papers, affidavits, and statements in writing inconsistent with their position or attitude as plaintiffs in the action, "the decree of the district court as to all the plaintiffs who did not disclaim" was affirmed. The question as to who had and who had not disclaimed was left open for future consideration. In accordance with the request of the court, the parties have prepared briefs and appeared at the bar and have presented their views upon this subject. The papers referred to were signed by the parties soon after the commencement of the action and they will be noticed in detail hereafter.

It is contended by counsel for appellant that, as the suit was instituted without the consent or knowledge of the plaintiffs named, the whole of the proceedings during the subsequent progress of the action were void, and that, therefore, the decree in their favor cannot be sustained. We apprehend that no legal proposition is better settled than that an attorney cannot appear in court representing an individual or person without authority from such person to act in his behalf and thus bind the party for whom he appears; that any action taken by an attorney without authority therefor is void, whether such action be questioned during the pendency of the action or after judgment.

As to whether the action of an attorney in voluntarily appearing for a person without authority can be ratified after judgment, as any other agency might be ratified, it is not necessary for us to discuss at this time. There is no doubt but that this action was originally instituted without the consent or knowledge of a portion of the persons

named as plaintiffs ; that soon thereafter they made statements in writing, either under oath or without that formality, in which this fact clearly appears.

While the same rules must be applied to this as to any other case coming under the general head of principal and agent, as to the invalidity of an unauthorized act of a person improperly representing himself as the agent or representative of another, and that the unauthorized acts of a person so representing himself are void and without legal force, yet we apprehend that where an attorney appears for another person in a court of justice without authority, and during the pendency of the action thus instituted the principal for whom the appearance was made appears and ratifies, either by word or act, the conduct of the person claiming to represent him, then the whole proceedings will be so far legalized as to make it binding both upon the person thus represented and upon those interested upon the opposite side. This must be the rule. (Weeks on Attorneys, sec. 247.) Any other would open a door to fraud which courts could not effectually close, however anxious they might be to do so. If, therefore, any of the plaintiffs have appeared in the district court during the course of the proceedings, prior to any action having been taken by the defendants, by which the person so appearing would be estopped, and have ratified the action of the attorneys, paid them for their services, participated in the trial, furnished evidence in their own behalf, aided in the efforts being made to defeat their adversary, and have thus placed themselves in a position by which they would be bound by any adjudication against them, they cannot be treated as having disclaimed or disaffirmed the action of the attorneys appearing for them, and would be entitled to the benefits of a decree in their favor.

Believing this to be the law of the case, we will inquire as to the attitude of the persons who, it is claimed, have filed disclaimers, and are not entitled to the benefits of the

decree.   As the suit was originally instituted, the following names appeared upon the petition as plaintiffs:

S. W. Little, Samuel Arbuckle, D. B. Alexander, A. J. Sawyer, S. G. Owen, Lorenzo Assmesson, R. H. Oakley, Sarah J. Purcell, A. P. S. Stewart, Thomas R. Clark, Mary A. McElhinney, D. C. Kinsell, Hannah Selwood, Alexander C. Heustis, W. J. Van Dorn, G. W. Lashus, Charles D. C. Heustis, Allen W. Hawley, A. F. Lewis, Samuel Arthur, G. F. Thornton, Sarah Cummings, William R. Rundell, Jacob Freedman, O. P. Austin, J. A. Buckstaff, Mary T. McNair, George D. Camp, Wilber F. Kellogg, Elizabeth N. Chase, Sarah A. Gable, Samuel Aughey, Clarinda A. Bumstead, Elizabeth Paden, Martha E. Snowden, Thomas Woods, Joseph S. Hoagland, Eliza W. Pillsbury, Henry V. Hoagland, W. S. Garrison, C. L. Hooper, S. E. Story, V. E. Farmer, Josephine St. Louis, Frank J. Wassika, Ella N. Miller, John H. Schwabold, Helen Weber, Samuel Henderson, Christine Bohlman, Joseph Richardson, Patrick Lyons, W. Sanford Gee, Allen Cogswell, M. B. Cheney, Mary E. Maloney, Emma A. Beach, Barrett F. Looth, Francis D. Howell, L. S. Howell, Samuel D. Bacon, Henry S. Gordon, executor of estate of E. H. Tuttle, deceased, Alice Clark, *nee* Tuttle, Jacob Freedman, Samuel T. English, Guy C. Barnum, H. O. Snow, George Warder, D. D. Muir, George W. Severance, Rhody A. Prindle, Mina W. Brown, W. J. Van Dorn, and G. W. Lashus.

During the progress of the trial, a portion of those named as plaintiffs were dropped out of the case.   We quote the following from the record:

" HARWOOD :  We will dismiss all these people who have made settlements.

THE COURT:  Parties who have no interest, you can drop them out on the trial.

MARQUETT :  If they want to take another course, let them.

BURR: We want them out of the case and judgment for costs.

THE COURT: They cannot recover costs if you are successful.

BURR: We will leave it there at present then.

WOOLWORTH: Let us have the reporter take the names of those who are dropped out.

Joseph L. Hoagland, Henry W. Hoagland, C. L. Hooper, Patrick A. Lyon, Samuel Henderson, Margaret Meyers, Guy C. Barnum, Joseph Richardson, Samuel Arbuckle, D. C. Kinsel, Sarah A. Gabriel, Eliza A. Miller, Eliza N. Pillsbury, Christian Bohlman, Allen Coggswell, Mary E. Maloney, Francis D. Howell, Lavender S. Howell, Samuel D. Bacon, D. D. Muir, George W. Severance, Rhoda A. Prindle, Mina W. Brown, V. J. Van Dorn (to be dismissed according to stipulation on file, and judgment according to stipulation), G. W. Lashus, A. F. Lewis, Sarah Cummings, Mary T. McNair, George D. Camp, Wilber F. Kellogg, Samuel Aughey, W. S. Garrison, W. Sanford Gee, Emma A. Beach, and Samuel T. English.

The persons above named are now dismissed out of this action under the prayer of the answer in this action, except as to Van Dorn, who is to be dismissed according to stipulation on file, and judgment according to stipulation."

We also make the following extract from the brief of appellee:

"The parties themselves make a record, and ask to have dismissed, under the prayer of their answer, certain parties which are dismissed. Under the issue which they plead — that there are certain other parties which were improperly made plaintiffs without their consent — there are, as we view it, six, put in the record either by mistake or, which the evidence clearly goes to show, were never parties and never really litigated this matter with the defendants, and of course the decree ought to be modified so as to exclude them from it, to-wit, M. B. Cheney, Jesse P. Chip-

man, Mary A. McSweeney, Samuel Arbuckle, Francis Wassika, and Josephine St. Louis, or Lancto."

This leaves the following named persons remaining upon the record as plaintiffs:

S. W. Little, D. B. Alexander, A. J. Sawyer, S. G. Owen, Lorenzo Assmesson, R. H. Oakley, Sarah J. Purcell, A. P. S. Stewart, Thomas R. Clark, Mary A. McIlhenney, Hannah Selwood, Alexander C. Heustis, W. J. Van Dorn, G. W. Lashus, Chas. D. C. Heustis, A. W. Hawley, Samuel Arthur, G. F. Thornton, William H. Rundell, Jacob Freedman, O. P. Austin, J. A. Buckstaff, Elizabeth M. Chase, Clarinda A. Bumstead, Elizabeth Paden, Martha E. Snowden, Thomas Woods, S. E. Story, V. E. Farmer, Josephine St. Louis, Francis Wassika, Ella N. Miller, John H. Schwabold, Helen Weber, M. B. Cheney, Barrett F. Looth, Henry S. Gordon, Alice Clark (nee Tuttle), Jacob Freedman, H. O. Snow, George Warder.

Of these it is claimed by appellants that the following should be stricken out, as having filed disclaimers in the action, to-wit:

J. A. Buckstaff, V. E. Farmer, A. W. Hawley, Henry Childer, A. J. Sawyer, Lorenzo Assmesson, Hannah Selwood, W. H. Rundell, Helen Weber, J. P. Chipman, F. J. Wassika, M. B. Cheney, T. R. Clark, J. St. Louis, or Lancto.

These names are taken from the bill of exceptions and the briefs, and are given as there found. It is quite probable that by mistake in copying, the discrepancies which we notice have occurred. It may be also observed that names occur among the "dismissed" which are not found among the plaintiffs.

The petition was filed on the 27th day of January, 1882. On the 30th day of February, of the same year, J. A. Buckstaff made an affidavit, which we here copy:

"STATE OF NEBRASKA, } ss.
  "*Lancaster County.* }

"I, J. A. Buckstaff, of said county, on oath say that I, never authorized T. M. Marquett, S. B. Galey, N. C. Abbott, N. S. Harwood, nor John Ames, nor any of them, nor any person whomsoever, to *commence* or prosecute any action for me, or on my behalf, or in my name, either severally or jointly with others, against Ezekiel Giles, Hiland H. Wheeler, Lionel C. Burr, William A. J. Gordin, and the heirs and representatives of Jacob Dawson, late of Lancaster county, deceased, or any or either of them, and if any such action has been commenced in my name it was done without my knowledge or consent, and I do not wish it to proceed, or be prosecuted any farther, and I repudiate the action of said attorneys and plaintiffs.

"(Signed)          J. A. BUCKSTAFF.

"Subscribed in my presence, and sworn to before me, this 30th day of January, 1882.

"(Signed)          L. MEYER, *Notary Public.*"

The questions presented will be examined in the order in which they occur in appellants' brief. This affidavit of J. A. Buckstaff was made on the 30th day of January, 1882. It was sworn to before a notary public and filed on the 20th of the following February. In it, referring to the suit, he says: "It was done without my knowledge or consent, and I do not wish it to proceed or be prosecuted further, and I repudiate the action of said attorneys and plaintiffs." This act of disaffirmance could not be more direct, and positive, and considered alone would have been sufficient to have justified the court in striking his name from the case; but it seems that no such action was taken. On the 6th day of July, 1887, the defendants filed their answer, in which it is alleged that the suit had been instituted in the names of a number of the plaintiffs (naming them) without their knowledge or consent, and that the suit had been repudiated by them, evidently referring to

the affidavits mentioned, but no reference is made to Buckstaff. The prayer of the answer is as follows:

"That it be declared that by the true construction of the last will and testament of said Jacob Dawson, deceased, in the petition set forth, that said Editha J. Dawson took an estate for life in the premises in the said petition described, determinable upon her marriage, and that upon her marriage with the said Pickering her said estate was determined, and the children of the said testator thereunder became seized in fee of said premises and entitled to the possession thereof, and that their interest and estate have come to and become vested in the said Giles, and that he is entitled to the possession of the said premises as against the said plaintiffs and each and every of them.

"*Second*—That it be adjudged that plaintiffs, by instrument in form to be approved by the court, release their claims in said premises, and surrender the possession thereof to the said Giles, and that he be forever quieted as against all claims of said plaintiffs.

"*Third*—That an account be taken of the rents and profits of the said premises and of the amount thereof, which has come into the hands of the plaintiffs respectively, and that each of them be adjudged to pay to the said Giles which each shall be found to have so received.

"*Fourth*—That a receiver of the rents heretofore collected, and also of those which may accrue pending this suit, be appointed, with the usual powers of receivers in such cases.

"*Fifth*—That the said plaintiff be adjudged to pay the costs of this suit, and that the defendant have all such other and further relief as the circumstances may require, and is just and equitable."

So far as we are able to discover, the attention of the court was not called to the disclaimer filed, by motion or otherwise, which would call for any affirmative action on the part of the court looking toward the striking of the

name of Buckstaff from the petition, but rather it seems
to have been somewhat of an issue made upon the trial.
We quote the following from the evidence of Mr. Buckstaff:

Q. No. 1723. How soon after that affidavit was made,
did you manifest your intentions to remain in the case?
[BURR: We object, as incompetent and for the further
reason that the party ·cannot repudiate a repudiation.
Overruled. Exception.]

A. I presume it was a year or more after that. I often
asked Mr. Burr to fix up that title with me. He kept
telling me he would, and I presume it was a year after
that I told Mr. Montgomery I wanted him to look after
my interests, and I wanted to be retained in this case if I
could.

Q. Were you ever dismissed in this case? [BURR : Ob-
ject, as calling for a conclusion, and incompetent. Over-
ruled. Exception.]

A. Not that I know of.

Q. Did you ever authorize anyone to dismiss that suit?

A. No.

Cross-examination by Burr:

Q. Is this [paper produced] your signature?

A. I think it is.

Q. Who filed this statement in this case?

A. I think you did.

Q. I did?

A. I never saw it. I guess so.

Q. That is filed March 30, 1879. Do you say I had
anything to do with it?

A. .I don't know I ever saw it before.  O! This was
*  *  *  that I think was filed by Harwood, Ames &
Kelly.

Q. After you filed the first affidavit, this is the first step
you ever took?

A. I talked to my attorney, Mr. Montgomery, a year
ago — some years ago.

Q. You say you were sued in the federal court?    Who was your counsel in that case?

A. I don't know what    *    *    *

Q. You say you were sued?

A. I don't know what you mean by the federal court.

Q. The court at Omaha.

A. Yes, sir.   He was my attorney there.

Q. Had you any other counsel?

A. I think Mr. Marquett and Harwood.

Q. You did nothing after filing the first disclaimer in this case or repudiation, till this paper I hold in my hand here.

A. I don't know.

Q. That is the first you know of?

A. I don't know.

Witness excused.

BURR: We offer in evidence this statement together with the filing marks on it.

No objection was made, and the paper was admitted, of which the following is a copy:

"In the district court of Lancaster county, Nebraska.

"SAMUEL W. LITTLE ET AL., PLAINTIFFS, VS. EZEKIEL
GILES ET AL., DEFENDANTS.

"Now comes J. A. Buckstaff, one of the plaintiffs in the above case, and asks leave to withdraw his affidavit and application for the dismissal of said suit so far as respects this plaintiff, and hereby affirms and ratifies all that his attorneys, Harwood & Ames and T. M. Marquett, have heretofore done or assumed to do as the attorneys of this plaintiff in said action.

"(Signed)        J. A. BUCKSTAFF."

Endorsed: "In district court; Little v. Giles; motion; 3174.   Filed March 30, 1887, E. R. Sizer, clerk d. c., Harwood & Ames, attorneys for plaintiffs."

We make the following additional extract from his testimony upon cross-examination tending to throw light

upon this particular inquiry. In seeking to fix upon the date of a conversation with Mr. Burr he was asked :

Q. Was the conversation about these lots?

A. No ; it was about the affidavit that I gave him.

Q. Then it was after this litigation begun, and was with respect to the affidavit that you gave him ?

A. It was about the time I gave him that affidavit he told me he had to put the property in Giles' name to get it out of the state court. That is the time he told me.

Q. That is the time that you made the affidavit that you had no knowledge of the bringing of this suit?

A. Yes, sir.

Q. Which affidavit was true as a matter of fact ?

A. I think it was at that time.

Q. It was true at that time, and is true now—the affidavit?

A. I think he bull-dozed me a little on that.

Q. I am not asking you that, but if the affidavit was true ?

A. I presume it was at that time.

Q. Is it true now ?

A. Well, I don't know about that.

Q. Truth don't change—it was true when you made it?

A. Well, yes, it was true; I did not know that I was a party to the suit at that time.

Q. Now you are a party if it wins, and not a party if it loses, ain't that it?

A. I think I am a party all around—win or lose—heads or tails.

Q. It is pay if you hit, and miss, do nothing?

A. No.

Q. You are in with the fight?

A. Bet I am. I am on the war path.

By this it appears that after the signing of the affidavit given to Mr. Burr, which was filed in the case, and before any action of the court was had upon the disclaimer,

Mr. Buckstaff concluded to proceed with the case, and counseled with his attorneys, and participated in the trial as one of the plaintiffs. As said by him the case had never been dismissed, although at one time he had repudiated the action of the attorneys who had instituted it, so far as his name was concerned.

While it would have been the duty of the court, had its attention been called to the fact, to inquire into the matter of the institution of the suit, and to have dismissed the case so far as Buckstaff was concerned, had he so desired, or rather had he not desired the suit to be prosecuted in his name, yet the affidavit filed could be treated as nothing more than a written statement made by him, in which he disaffirmed the action of those who had assumed to act for him. No notice of its filing seems to have been given to the attorneys who so acted, and so far as they are concerned, there is no proof that their action was not ratified by him. From the reputation and standing of the attorneys involved in the prosecution of the case, we doubt not that, if it was thought that he did not desire to prosecute, they would have moved in the matter themselves to the extent of having his name stricken from the list of plaintiffs, such at least would have been their duty; but no such action seems to have been taken. It is but justice to them to say that the action being brought to quiet title, and the interest of all the plaintiffs being adverse to Giles, and said attorneys being employed by a large number of such owners, the suit was brought in the names of all such owners, there being insufficient time to confer with all before filing the petition.

We doubt not that, after having taken the part in the trial which was taken by him, he would have been bound by the judgment had it been adverse to him; and he could not then have been permitted to question the authority of his attorneys who appeared in his behalf during the long trial before the district court. We have no doubt but that

he would have been bound by the judgment. We are equally clear that he is properly retained in the case as it now stands.

The affidavit made by V. E. Farmer was as follows :

"STATE OF NEBRASKA, ⎫
  "*Lancaster County,*  ⎬ *ss.*
                        ⎭

" I, V. E. Farmer, in said county, on oath do say that I have never authorized T. M. Marquett, S. B. Galey, N. C. Abbott, N. S. Harwood, nor John H. Ames, nor any one of them, nor any person whomsoever, to commence or prosecute any action for me, or in my behalf, or in my name, either severally or jointly with others, against Ezekiel Giles, Hiland H. Wheeler, Lionel C. Burr, William A. J. Goodwin, and the heirs and representatives of Jacob Dawson, late of Lancaster county, Nebraska, deceased, or any or either of them, and if any such action has been commenced in my name, it was done without my knowledge or consent, and I do not wish it to proceed or to be prosecuted further, and I repudiate the action of said attorneys and plaintiffs so far as I am concerned.

"V. E. FARMER."

" Subscribed in my presence and sworn to before me this 30th day of January, 1882.        J. H. McMURTRY,
                        "*Notary Public.*"

So far as we are able to ascertain in the voluminous record before us, this is the only reference to Mr. Farmer, except the allegation in the petition that he held title under Mrs. Dawson to lot 12, block 32, Dawson's addition to South Lincoln. The disclaimer having been made after the petition was filed, and allowed to remain as his last expression upon the subject, we think the decree, whatever it may be, can have no force as to him, and therefore the decree as entered by the district court cannot stand, and as to him it will be reversed and the case dismissed.

The bill of exceptions shows no disclaimer by A. W.

Hawley. A copy of an affidavit which is said to have been made by him is attached to the transcript. But under a well established rule of law in this state (*Tessier v. Crowley*, 16 Neb., 369), it cannot be considered, and as to him the decree will have to stand.

The affidavit of Henry Childer, which was similar to that made by Farmer, need not be set out here at length. It was made on the 20th day of February, 1882, and filed on the same day. We are unable to find that any subsequent action was taken by him. The same rule must be applied to him as to Farmer.

The affidavit made by A. J. Sawyer was in the same form, and need not be here copied. It was dated the 31st day of January, 1882, and filed on the 16th day of February following. Mr. Sawyer appeared in the trial as one of the plaintiffs, and took part as an attorney, for perhaps himself and others. In his testimony upon the witness stand he explained the giving of the affidavit. We make the following extract therefrom, elicited on the cross-examination:

Q. At the time this suit was brought the petition alleges the title to these lots to be in Samuel Arbuckle?

A. Yes, sir.

Q. Is that the fact?

A. No, it is not the fact.

Q. This Samuel Arbuckle wa'nt a plaintiff?

A. I don't know how he came to be.

Q. What is the fact?

A. I don't know anything about that. I did not read that petition.

Q. Are you a plaintiff?

A. Yes, I am a plaintiff.

Q. A party to the record?

A. My name is used there — a party to the record I am supposed to be in that case.

Q. Why was Samuel Arbuckle's name used in reference to these two lots?

A. I cannot tell.

Q. Those four lots?

A. I cannot tell anything about it. I was not there when that was drawn, nor did I take any part in the drawing of it.

Q. Nor have anything to do with it?

A. Not anything.

Q. Hence you would not be bound by litigation with Arbuckle in that petition?

A. I am not responsible for what some one else may have said. I discovered that very recently.

Q. You are counsel in this case as well as attorney for yourself?

A. Yes, for certain parties.

Q. And have been for some considerable time?

A. Some little time; yes, sir.

Q. You take quite a deep interest in this Dawson will litigation?

A. Well, I am somewhat interested personally, and interested on behalf of others.

Q. As a citizen?

A. Personally as a victim or a litigant.

Q. You have considerable feeling with respect to some of the parties?

A. Not very much. I have not manifested much feeling. Mr. Burr and I have been good friends so far as I know. So has Mr. Wheeler.

Q. I see by the petition Arbuckle is owner of these four lots: 9, 10, 11, and 12, in block 33, and lot 10 in block 45; do you own 10 in 45?

A. No, sir; not that I know of.

Q. But you did own, at the commencement of this suit, these four lots alleged to be in the name of Arbuckle?

A. That is what my deeds say.

Q. At the time of the commencement of this suit Arbuckle had no interest in these four lots?

A. I think he had not. I don't know how he comes to be made a party, nor anything about it. I have never spoken to him on the subject, and did not discover it till the other day when I came into court; I looked over the record and found they had got my lots misdescribed.

Q. Instead of your lots being misdescribed, they had got your lots in the name of Arbuckle?

A. Yes, sir.

Q. Arbuckle's lots described your lots?

A. Yes; they should have put these as being owned by me instead of Arbuckle.

Q. You, I think, testified that you never reconveyed the lots to Mr. Arbuckle?

A. No, nor anyone else. I have held them since I took them.

Q. Stood right by them?

A. Yes, sir; and intend to till the last moment. If I have to surrender them, I will gracefully. When Mr. Burr asked me for an affidavit, I did not know of the commencement of the suit, and I promised to give him one to the effect that I had not authorized the commencement of this suit. I did not know of it at the time.

We also quote the following from the examination-in-chief when recalled:

Q. Mr. Burr put in your affidavit. Have you seen that?

A. Yes, sir.

Q. State the circumstances under which it was given

A. On the 31st day of January, 1882, he came to my office and asked me if I had sued him. I told him I had not. Well, he said, are you willing to make an affidavit to that effect? I thought for a moment—I did not know what he was driving at—and I finally said, Yes, I will make a statement under oath, if you wish me to, that I have not sued you. He then pulled out an affidavit, or told me he would procure one, I would not say which it was. Any-

way it is 31st there, and it might have been a day or two before that, but on the 31st I signed an affidavit to that effect. He talked to me to some extent about it, and then he told me the nature of the suit. He said that I was one of the plaintiffs against him and Wheeler. I said I never authorized anyone to sue him nor Wheeler for me; and very shortly after, as it appears from the affidavit—I don't remember just where I signed it, but it seems that Mr. Guy A. Brown was the notary—I have no recollection of signing it before Mr. Brown, but it seems he was the notary—it is more than likely I did. Possibly I was up at the library, and it was brought to me while there, and I signed it. It simply stated at that time a fact: I had not sued Mr. Burr nor Wheeler, nor had I authorized anyone at that time to bring suit for me, and it was somewhat of a mystery to me just how it came about. A few days after I investigated the matter a little further, and found that a great number of plaintiffs had united in an equity suit, to quiet title to property, and I was made a party to it without my consent. I found out the circumstances, how the suit came to be brought, and all about it, which I did not know at the time I signed the affidavit. I never authorized Mr. L. C. Burr to file any affidavit for me, nor did he say that he wanted to file it, nor was Mr. Burr authorized to act for me as an attorney that I know of in this suit. I know that he never was, and after I found out the nature of this case, and that it was important for all to sue in one, I said that it was all right, that it might go on.

Q. Was there ever any step taken to dismiss you from the case?

A. No, sir; I have never been dismissed from the case. I am still in it as it appears both here and at Omaha.

Q. If there is anything else you may state.

A. I may state this——[BURR: I object, unless he asks some question that we may know what it is.]

Q. By SAWYER: State if Burr, in speaking of this matter—what he said about bringing an action against these parties in Dawson's addition to South Lincoln.

A. He stated to me—[BURR: Object, as incompetent, irrelevant, and immaterial. Objection overruled.]—A. continued.—a number of times that he had no intention whatever to prosecute those people who were located in South Lincoln, or Dawson's addition to South Lincoln. It was not his intention to molest them out there, though he did not make me any promises. I did not ask for any. I simply stated that it was a fact, gave it after. I will state, three days after the suit commenced I knew nothing except what Burr told me, and I signed the affidavit. The suit was commenced the 27th day of January, and the affidavit shows I signed it on the 31st day of January.

There is no doubt but that the decree retaining Mr. Sawyer as a party was right, and it will not be molested.

Although Lorenzo Assmesson's name does not appear in the petition as the owner of any of the property described therein, yet it appears that on the 30th day of January, 1882, he made an affidavit similar to the one above copied, which was filed on the 20th day of the following February. We are unable to find anything in the bill of exceptions which could be construed into a subsequent ratification of the institution of the suit. Neither are we able to find any proof of title in him to any of the property described in the petition. The same rule must be applied to his case as to Farmer, and the decree reversed and the action dismissed as to him. The same is true as to Hannah Selwood.

W. H. Rundell appeared on the trial as plaintiff and testified in his own behalf upon the merits of the case; and upon rebuttal as to the signing of the affidavit as follows:

Q. Do you know anything about a paper Mr. Burr presented to you?

A. Yes, I signed a paper.

Q. Did you know what the paper contained at that time?

A. No, sir.

Q. Do you know the circumstances under which you signed it, and where you signed it?

A. He came to my house and wanted to know if I had lawed him. I said no, not that I know. He took a paper out of his pocket   *   *   *   no, he said my name was on the list with the rest. I said   *   *   *   I don't know nothing about it. Then he took a paper out of his pocket and asked me whether I would sign it or not. I thought it was all right, and signed it.

Q. Do you know whether that authorized the dismissal of the suit or not? [Burr objected, as leading and incompetent. Overruled and exception.]

A. No, sir; dismiss nothing.

Q. Did he say anything about its effect on your property? [Burr objected, as leading. Overruled and exception.]

A. He said now he would not trouble us at all. He asked what the property was. I told him. We then talked it over. He said, "I will never trouble you at all; it is not this property I am after, it is the town. We shall never trouble this property out there."

He clearly ratified the institution of the suit, and the decree as to him must stand.

An affidavit purporting to have been made by Helen Weber was filed, but which, it is said by her husband in his testimony, was not sworn to. This, however, is not deemed important, as, in our view, the jurat adds little if anything to the statements contained in the writing. It is amply shown that after the paper was signed the husband, as agent of Mrs. Weber saw, and retained counsel to prosecute the case, and took an active part himself throughout its pendency, taking the witness stand, and testifying to material facts upon the merits of the case, as well as the

fact of the execution of the paper referred to. So far as this feature of the case is concerned, the decree of the district court was correct.

J. P. Chipman, referred to in appellants' brief, is doubtless the same person referred to in appellees' brief as Jesse P. Chapman, who, it is conceded, is not a proper plaintiff, and will be so treated. The same disposition will be made of M. B. Cheney, and J. St. Louis (Lancto).

The petition was filed January 22, 1882, in which it was alleged that Thomas R. Clark was the owner of lot 2, block 33, Dawson's addition to South Lincoln, and in which he also appears as plaintiff. On the 25th day of February, 1887, he, with his wife, Annie Clark, conveyed the property to defendant, Ezekiel Giles, for the consideration of $325. It was alleged in the answer filed July 6, 1887, that defendant and Clark had compromised, and settled their differences and that he, Clark, had conveyed the property in dispute to Giles. We are unable to find any evidence that Clark took any part in the trial, or had any interest therein. As the deed was introduced in evidence, its validity not being questioned, we must presume that the whole matter between him and defendant had been adjusted to his satisfaction. The decree as to him will therefore be set aside.

The decree of the district court in favor of V. E. Farmer, Henry Childer, Lorenzo Assmesson, J. P. Chipman, M. B. Cheney, J. St. Louis (Lancto), and Thos. R. Clark is set aside and the cause as to them is dismissed. As to the remaining plaintiffs, the order of this court made on the former hearing affirming the decree of the district court will stand as then made.

JUDGMENT ACCORDINGLY.

THE other Judges concur.