ROBERTS ET AL. v. THE DENVER, LAKEWOOD AND GOLDEN
RAILROAD COMPANY ET AL.

1. ATTORNEYS—RATIFICATION.
If an attorney commence an action without authority, the act may be
ratified by his client, and such ratification is a good answer to a
motion to dismiss the suit because of want of authority on part of
the attorney to institute it.

2. RAILROAD MORTGAGES—INCOME—RIGHT OF GENERAL CREDITORS.
A railroad company executed to a trustee a mortgage on all its prop-
erty, franchises and privileges, together with " whatever property
it might thereafter acquire of every sort and description, including
its rents, income and profits," to secure the payment of a series of
bonds. It was provided by the mortgage that, until default, the
railroad company should have the right to possess and operate the
road and use the income or revenue in the same manner as though
it was unmortgaged. *Held*, that until possession be taken by the
mortgagee, the income belongs to the railroad company, and may be
reached by its general creditors.

3. SAME—INJUNCTIONS.
Where there is an attempt by one of the creditors, to the prejudice of
those of his class, or by creditors generally, whose rights are pro-
tected by the security, to interfere with the mortgaged property,
an injunction to protect the others may be maintained.

4. SAME.
The remedy of holders of railroad mortgage bonds for the enforcement
of their debt, which is represented by the bonds and coupons, is
through the trustee only, and by the adoption of some one of the
remedies for which the security provides.

*Appeal from the District Court of Arapahoe County.*

ERROR is laid to the rulings of the court on a motion to
dismiss the action for want of authority on the part of the
attorney to bring it for one of the plaintiffs, and the over-
ruling of a demurrer to the complaint for want of facts suffi-
cient to constitute a cause of action. We take the complaint
as an accurate statement of facts, though as to some of its
details it would be more preferable to set out the exact
phraseology of the security involved. This is impossible,
because the instruments are not set out in *hæc verba*. The

Denver, Lakewood and Golden Railroad Company is a corporation organized under the laws of the state to construct and operate a railroad within certain designated points and branch lines run in connection with it. About the time of its organization the company issued a series of bonds, four hundred in number, each for the principal sum of $1,000, bearing a specific rate of interest, payable on definite dates as provided for by coupons attached to each of the bonds. According to the following recital in the securities, each bond was one of a series " of first mortgage bonds, numbered from one upwards, each of like amount, tenor and date; all of which said bonds and coupons are equally and without preference secured by mortgage or deed of trust of even date herewith, duly executed and delivered by The Denver, Lakewood and Golden Railroad Company to The Farmers Loan and Trust Company of the City of New York." To secure the payment of these bonds the corporation executed to The Farmers Loan & Trust Company of New York a mortgage, whereby there was "granted and conveyed unto the Trust Company and its successors, all of the property, franchises and privileges of the Railroad Company." As is universally the case in railroad mortgages, both by general language and particular designation, the Railroad Company conveyed to the trustee whatever property it then had, or might thereafter acquire, of every sort and description, including its rents, income and profits. It was recited in the mortgage that the conveyance was made to the Trust Company for the benefit of parties who might become purchasers or owners of the bonds, and that the bonds secured by the deed of trust were issued and to be held by the holders of the bonds subject to the agreements and conditions set out in the deed. Among other conditions expressed in the conveyance, and on which the bonds were issued, was this:

" That the bonds secured by said deed of trust, though issued and sold at different times, are all to be of the same date, and payable at the same time as set forth in said deed of trust, and are to be equally and without preference secured

by said mortgage or deed of trust. It is further provided that in default of payment of either the principal or interest, or until the Railroad Company shall make default or breach in the performance of some of the conditions imposed by the deed, it should have the right to possess and operate the road and use the income or revenue in the same manner as though it was unmortgaged." It was further provided that in case of default in the payment of the principal or interest, and the default should continue for six months, the Trust Company could enter into possession of the railroad and its property and operate it for the benefit of the bondholders, appropriating the income to the payment of the delinquent interest, and to the principal which would then be due. The holders of the majority of the bonds were given the right under certain circumstances to compel the trustee to proceed. According to another article in the mortgage, the right of action under it was vested exclusively in the trustee, and under no circumstances could any bondholder or bondholders institute an action or other proceeding to enforce any remedy provided, or foreclose the mortgage, except on a refusal of the trustee to act. These are all the provisions stated in the complaint, and probably all which would be needful for us to consider.

In November, 1894, Roberts brought suit against the company before a justice of the peace in Arapahoe county to recover judgment on nine interest coupons, cut from bonds which he evidently held, of $30.00 each, being the interest coupons on bonds Nos. 18, 19, and 184, of the series of four hundred originally issued and heretofore described. Roberts had judgment for $296.80, and execution was issued against the company for that sum and costs to a constable, who attempted to execute it by the service of a process of garnishment on the Colorado National Bank. The bank answered that it had funds in its possession belonging to the Railroad Company in the sum of $310. The complaint thereafter alleged that the moneys which the bank answered it had belonging to the railroad were moneys which had come into the hands of the treasurer of the railroad as revenue and

income in the ordinary business of the operation of the road, and had been deposited by the Railroad Company in the bank, to be paid out by checks drawn by the treasurer in liquidation of its current debts.    These moneys were alleged to be necessary in the management of its ordinary business as a carrier in the state, and that Roberts would appropriate these funds to the payment of his interest coupons unless he was restrained by the order of the court.    As will be observed, after Roberts had obtained his judgment and levied his process on the funds in the bank, this suit was brought to prevent its enforcement.    The action was in the names of the Railroad Company and the Loan & Trust Company.    The only relief sought was an injunction to restrain Roberts and the constable from enforcing the judgment.

After the process and writs were served, Roberts appeared and filed his demurrer to the complaint, and likewise a motion to dismiss the action, because the attorney who brought it was not thereunto authorized by the Trust Company, which was made a party plaintiff.

The motion was denied, the demurrer was overruled, and final injunction issued, and Roberts prosecutes this appeal.

Messrs. BARTELS & BLOOD, for appellants.

Messrs. YEAMAN & GOVE, for appellees.

BISSELL, J., delivered the opinion of the court.

While the authorities are not entirely in harmony respecting the practice which must be adopted in order to successfully contend for the dismissal of an action because of the want of authority on the part of the attorney to commence it, we can affirm the ruling with very little difficulty.    We do not attempt to determine whether the Railroad Company was a necessary or an indispensable party, nor that the motion would not lie if it appeared the attorney had authority to proceed on its behalf in beginning the suit.    It is quite pos-

sible the Railroad Company might maintain this bill to protect its revenues, as well as incidentally to defend the rights of the bondholders.  It transpired at the hearing of the motion that the Trust Company adopted the acts of the attorney and authorized him to prosecute the action in its behalf and in its name, in the general discharge of its duties as trustee to the owners of the bonds.  This authority came to the attorney almost immediately after the suit was begun, and, on the principle of the ratification of the acts of an agent who proceeded without an original delegation of authority, justified the court in refusing to dismiss the action and proceeding with it to judgment.  *Great West Mining Co. v. Woodmas of Alston M. Co.*, 12 Colo. 46 ; *Williams v. Uncompahgre Canal Co.*, 13 Colo. 469; *Dillon et al. v. Rand*, 15 Colo. 372; Weeks on Attorneys, sec. 247 ; *Mason v. Stewart*, 6 La. 736 ; *Little et al. v. Giles*, 27 Neb. 179 ; *Clark v. Fitch*, 2 Wend. 461.

On principle, there should be no trouble with this proposition.  While it is the privilege of the defendant to question the authority of the attorney who has brought the suit, his acts may be adopted; and, on general principles, an act ratified is the full equivalent of an act done under antecedent authority.  The general law of agency disposes of the contention.  We think the court was right in refusing to dismiss the suit.

The questions presented on the demurrer are of much greater difficulty, and of very large importance.  In the numberless foreclosure proceedings brought against railroad companies with which the state and federal courts have been so largely occupied for many years, some phases of the question have come up and been frequently decided, yet the most difficult branch of the inquiry would seem only to have come before the courts of one state for adjudication.  This does not of necessity signify that it has infrequently been presented to the profession.  It may be that the particular remedy has not been often invoked, because the general professional judgment may have been against the action.  At all events, we are so thoroughly satisfied with the basis on

which the direct adjudications are rested that we unhesitatingly reach the same conclusion for the same general reasons.

The rights and remedies of mortgagor and of mortgagee at the common law, and generally under the statutes and practice of the states, are tolerably well settled. Except as varied by statute or practice, the mortgagee may pursue any one of several remedies. He may take possession and apply the rents and profits of the estate to the liquidation of the debt, or he may foreclose the mortgage, or sue on the bond or note. Speculation respecting the existence of one or all of these remedies in Colorado would be profitless, and the principle only is stated because it illustrates the general notion of all the decisions wherein it is adjudged the holder of the promise may sue at law and get judgment on his debt, or foreclose his security at his option. This is really the basis of all those cases which hold that wherever one holds securities, whether of this class or any other, he may sue the debtor and obtain judgment, though he may not interfere with the property which is covered by the security. This rule is enforced in some of the cases and recognized in others. The authorities on which the appellant relies directly adjudicating the right of the holder of the debt to sue at law rest on this doctrine, but they go no farther than to adjudge the general right to belong to the holder of the debt to sue at law on his obligation. Many of them undoubtedly hold that notwithstanding the mortgage may cover the rents, income, and profits of the company, these are not bound by the security, but the corporation has a right to devote them to its general purposes in the payment of its current obligations to the same extent as though they had not been included within the terms of the instrument. The cases also hold that this general right on the part of the mortgagor to enjoy the rents of his estate preserves the income to the railroad company freed from the obligation of the security, unless there has been some attempt on the part of the trustee or the bondholder to sequester the property and the income thereby become applicable to the payment of the security. Though

the income is included by the terms of the instrument, it must be inoperative until after possession taken. The rule is adopted because of the necessities of the situation. Otherwise the company would be not only embarrassed in its operations, but absolutely debarred from the successful prosecution of its enterprise. In nearly all these securities, as in this, the right to use the income in the operation of the road is expressly reserved to the company, notwithstanding its inclusion in the instrument. *Gilman v. The Ill. & Miss. Telegraph Co.*, 91 U. S. 603; *Fosdick v. Schall*, 99 U. S. 235; *United States v. County of Macon*, 99 U. S. 582.

Many other authorities hold this same general doctrine. None are more exhaustive and satisfactory than these, and the opinion is therefore left unincumbered by the citation of the long line of cases which announce this proposition. It must be observed that the right to maintain the suit was either limited to those persons who come within the description of general creditors, or the right was limited to the seizure of property which was not embraced in the security. The right to maintain the suit and to prosecute it to judgment, so far as we have been able to learn, is always subject to one or the other of these limitations, and where neither the one nor the other exist, the right to prosecute the suit to judgment and to collect has never been affirmed.

This same eminent authority has likewise settled the right to maintain such a suit as that brought by the Railroad Company against Roberts. It has been pretty generally held that where there is an attempt by one of the creditors to the prejudice of those of his class, or by creditors generally whose rights are protected by the security, to interfere with the mortgaged property, an injunction to protect the others will be maintained. *Macalester's Admr. v. Maryland*, 114 U. S. 598; *Gilman v. The Ill. & Miss. Telegraph Co.*, *supra*.

The only question remaining unsettled respects the real basis of the suit, to wit, the right of the trustee and the Railroad Company to restrain the individual bondholder from enforcing a judgment against the income, regardless of any

action by the trustee on behalf of all the bondholders, or of any suit brought by the bondholders themselves where the trustee has failed or refused to act. This is in reality the nub of the controversy. If the bondholder has the right to bring suit on the overdue coupons and obtain judgment and levy on the income of the Railroad Company, or on the specific property covered by the mortgage, then the bill cannot be maintained, and the judgment creditor should be permitted to proceed with the enforcement of his judgment. As we before observed, the question has not been often before the courts. The only cases to which our attention has been called are undoubtedly against it. As has been observed in some of the cases already referred to, railroad mortgages are of recent invention, peculiar in their form, comprehensive in their scope, essential to the internal commerce of the country, and either require the modification of old rules governing the foreclosure of mortgages and the rights of mortgagees and mortgagors respectively, or the creation of new ones which shall subserve the best interests of the country as well as of the parties most immediately concerned. These ideas or those similar in form and expression have led that eminent tribunal, from which all of the cases thus far have been cited, to very clearly limit and control the rights of the mortgagees in the enforcement of their securities and to control the railroad companies when the trustees have taken possession and thereafter sought to apply the income and profits of the company to the liquidation of its securities. The rights and equities of general creditors as well as of mortgage bondholders, the rights of those who are entitled to a preference in the application of the revenues and incomes to the liquidation of their debts as against the bondholders before and after possession taken, have been much considered and discussed. Litigation of this description has settled many of the questions, and the opinions have laid down principles which are clearly applicable to the present controversy. The Pennsylvania courts have undoubtedly declared the bondholder may not reduce his claim to judgment and levy his

execution on the property covered by the mortgage, nor may he by this proceeding get from under the binding force of the general rule that bondholders are a class and the bonded debt a unit.  So far as respects its right of enforcement, the trustee is bound to treat the debt as a whole and obligated to enforce the security for the benefit of all the bondholders, who are entitled only to share pro rata in the proceeds.  This principle is most undoubtedly hostile to the action which Roberts commenced, and if recognized must prevent the enforcement of his judgment.  The real principle of the Pennsylvania cases is recognized by the supreme court of the United States, in *Fosdick v. Schall, supra*, where it is held that every railroad mortgagee impliedly agrees that the current debts shall be paid out of the current funds of the company, and that he has no claim to the income until after possession taken.  In the language of the distinguished late chief justice, "the business of all railroad companies is done to a greater or less extent on credit.  This credit is longer or shorter, as the necessities of the case require ; and when companies become pecuniarily embarrassed, it frequently happens that debts for labor, supplies, equipment, and improvements are permitted to accumulate, in order that bonded interest may be paid and a disastrous foreclosure postponed, if not altogether avoided.  In this way the daily and monthly earnings, which ordinarily should go to pay the daily and monthly expenses, are kept from those to whom in equity they belong, and used to pay the mortgage debt.  The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements.  Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income.  If for the convenience of the moment something is taken from what may not improperly be called the current debt fund, and put into that which belongs to the

mortgage creditors, it certainly is not inequitable for the court, when asked by the mortgagees to take possession of the future income and hold it for their benefit, to require as a condition of such an order that what is due from the earnings to the current debt shall be paid by the court from the future current receipts before anything derived from that source goes to the mortgagees."

According to the force and effect of this decision, the earnings of the company are subject to its control as against the bondholders, who have no right to appropriate it to the payment of their security, so long as there are outstanding debts which are unliquidated, and which equitably have a right to have that income applied to the satisfaction of their claims before the bondholder may compel its appropriation to the liquidation of his debt. If this be true, it is not easy to see on what principle the bondholder may insist on his right to bring an action at law on the overdue coupon and seize by execution that which he might not appropriate if he intended to enforce his security, on which he has agreed to rely. The remedy of the bondholders for the enforcement of their debt, which is represented by the bonds and coupons, is through the trustee only, and by the adoption of some one of the remedies for which the security provides. *Bradley v. Chester Valley Ry. Co.*, 36 Pa. St. 141; *Commonwealth v. Susquehanna & Delaware River R. R. Co.*, 122 Pa. St. 306; *Addison et al. v. Lewis et al.*, 75 Va. 701.

This in no wise infringes on the right of the general creditor to bring his action and collect his judgment, wherever he is able to establish a debt in his favor. The limitation is only operative and applicable to the bondholders, who are a numerous class which has accepted the security for the payment of the debts which provides a particular remedy to which they must look for the enforcement of these obligations. The character of these securities, their immense number, the diversity of their holdings, as well as the preservation of the mutual rights and obligations of the Railroad Company and the creditor, require the application of this

principle. As was very forcibly suggested in the 36th Pennsylvania State, the long periods of time over which these securities run would absolutely debar the Railroad Company from effecting the loans essential to their creation and existence if the holder were not assured that no other creditor of his class could seize and sell the security without his participation in the result. To permit suits by bondholders on coupons to be begun, and the judgments obtained thereon enforced against the income, would inevitably result in preventing the Railroad Company from carrying on its operations. In case of a default in the payment of interest by the Railroad Company, a flood of disastrous litigation would be started which would undoubtedly force it out of business and turn it into the hands of a receiver appointed by the court to protect it from the demands of insistent creditors. These results should not be permitted unless they are inevitable. We do not believe it. We think the principle announced in the *Pennsylvania Case* is just and legitimate, and one which should be held universally applicable to cases of this description.

The judgment of the court below was in accordance with these views, and it will accordingly be affirmed.

*Affirmed.*