Lincoln Rapid Transit Co. v. W. H. Rundle.

[Filed May 18, 1892.]

| 34 | 559 |
| 40 | 753 |
| 34 | 559 |
| 52 | 498 |
| 55 | 205 |
| 34 | 559 |
| 59 | 59 |

1. **Lis Pendens.** Under section 85 of the Code, as it existed prior to 1887, where an action had been brought which affected the title or possession of real estate, and summons had been served or publication made, third parties were charged with notice of the pendency of the action, and while the action was pending could acquire no interest in the subject-matter as against the plaintiff's title.

2. ———: **Stare Decisis.** In the case of *Little v. Giles*, 25 Neb., 313, and 27 Id., 179, it was decided that Miles had no interest in the property in controversy, and hence his grantees took no interest therein.

Error to the district court for Lancaster county. Tried below before Chapman, J.

*J. R. Webster*, for plaintiff in error.

*Sawyer & Snell*, and *Marquett, Deweese & Hall, contra*, cited, on the question of *lis pendens: Tilton v. Cofield*, 93 U. S., 164; *Wright v. Smith*, 11 Neb., 343; *Harrington v. Latta*, 23 Id., 100; *McIlwrath v. Hollander*, 39 Am. Rep. [Mo.], 484; *Frye v. Calhoun Co.*, 14 Ill., 132.

Maxwell, Ch. J.

This is an action of ejectment brought in the district court of Lancaster county by the defendant in error against the plaintiff in error to recover possession of lots 7, 8, and 9 in block 38, in Dawson's addition to Lincoln. The answer of the defendant below is in substance a judgment in the United States circuit court. On the trial of the cause the jury returned a verdict in favor of Rundle, and for $100 damages, and a motion for a new trial having been overruled, judgment was entered on the verdict.

Rundle claims title through a conveyance from Editha J.
Dawson, who derived title to the lots through the will of
her husband, Jacob Dawson.   A copy of the will is set out
in the case of *Little v. Giles*, 25 Neb., 313.   After the
widow had conveyed all the lots in question and received
the consideration therefor, she married again, whereupon
the children assumed that the real estate reverted to them
and they made a conveyance to Burr and Wheeler, who af-
terwards conveyed to Giles, the father-in-law of Burr, and
a non-resident of the state, who brought a number of ac-
tions in the federal court to recover the possession.   There-
upon all, or nearly all of the purchasers of lots joined and
brought an action in the district court of Lancaster county
for an injunction to quiet their title and prevent a multi-
plicity of suits.   The prayer of that petition is as follows :

"Wherefore these plaintiffs pray that the judgment and
decree of this court that the said defendants, and each and
all of them, all persons claiming through and under them,
or any of them, or acting or assuming to act by the au-
thority or with the connivance of the defendants, or any
of them, be restrained and enjoined during the pendency
of this action from in any suit, action, or proceeding at
law, or in equity, on the courts of this state, or any other
courts, assailing, traducing, or questioning the title or pos-
session or right of possession of these plaintiffs, or any of
them, in or to said lots, tract, or parcels of land, or any of
them, or by such suit or proceedings, or in any other man-
ner, to interfere with or question the possession of these
plaintiffs, or any of them, or their tenants or other persons
holding under them, or any of them, to any of said lots
or parcels of lands, or to the rents, issues, profits, use, or
occupation of the same, or any of the same, and that the
said defendants, and each and all of them, be likewise re-
strained during the pendency of this action, each and all
of them, from executing, acknowledging, or delivering, or
authorizing, advising, or conniving at the execution, ac-

knowledgment, and delivery of, or the recording or filing for record of any deed or pretended deed, or instrument of writing, conveying or incumbering, or pretending or as-suming to convey or incumber, or in any manner affect the title, occupancy, or possession or right of possession of said lots or parcels of land, or any of them, or interfering with the same in any manner whatever. That on the final hearing of this cause said injunction be made perpetual.

"Second—And the plaintiffs further pray that a certain pretended deed of conveyance bearing the date about September 15, 1879, executed by the defendants William R. Dawson, M. C. Dawson, and M. S. Dawson as grantors, purporting to convey said lands to the defendant Lionel C. Burr and Hiland H. Wheeler, and now of record in the clerk's office of Lancaster county, Nebraska; and also a certain pretended deed bearing the date about the 27th day of April, 1880, executed by the defendant Melita C. D. Tillman as grantor, and purporting to convey said lands to the defendant Giles, and now of record in said clerk's office; and also a certain pretended deed of conveyance executed by defendants Albert L. Dawson and A. A. Knicely as grantors, and purporting to convey said lands to the defendants Burr and Wheeler; and also a certain pretended deed of conveyance executed by said defendants Hiland H. Wheeler and Lionel C. Burr, and purporting to convey said lands to the defendant Giles, and now of record in said clerk's office, be each and all of them canceled, set aside, and held for naught.

"Third—That each and all of said plaintiffs be adjudged and decreed to have a good and valid and indefeasible title in fee simple of the several lots, tracts, pieces, and parcels of land so held and owned by them as aforesaid, free and clear of all claims, liens, demands, interest, title, or incumbrances of the said defendants, or any of them, or of any person claiming through or under them, or any of

39

them, and for such other or different judgment, order, decree, or relief as in equity and good conscience ought to be rendered herein."

This action was brought on the 27th of January, 1882, and a temporary injunction allowed as prayed, which injunction seems to have continued in force until final judgment and alleged in substance that the title had been collusively transferred to Giles; that it was not a *bona fide* transfer, but made for the purpose of removing the cause to the federal courts; that Burr and Wheeler were the real owners of the land, and that the federal court had no jurisdiction. This action was removed by Giles into the circuit court of the United States. Issues were joined and proof taken which showed beyond question that Giles was not a *bona fide* purchaser but merely clothed with apparent ownership for the purpose of removing the cause. After the decision in the circuit court the case was taken to the United States supreme court, where, on the 1st day of November, 1886, the judgment of the circuit court was reversed, the court holding that the United States circuit court had no jurisdiction and it was remanded to the state court for further proceedings. Soon after this decision was rendered Giles transferred all the lots in controversy to one Miles, a relation of Burr, who at once commenced a number of actions in ejectment in the federal court, which court had been directed to remand the cause for a number of the very same lots which were in litigation in the cause to be remanded. The cases seem to have been pressed to a speedy determination in that court before the action in equity in regard to the same lots could be heard in the state court. Judgments were rendered in favor of Miles in the ejectment cases. Soon afterwards a hearing was had in the district court of Lancaster county. This matter is distinctly put in issue by the 20th paragraph of the supplemental answer of Giles *et al.* in the case of *Little et al. v. Giles,* which is as follows:

"And these defendants further say that on the —— day of December, 1886, the said Giles made, executed, and delivered to one Frank M. Miles a warranty deed of all the lots claimed in said petition by the said Elizabeth and Josiah Paden, lot 5 in block 31; and A. J. Sawyer, lots 5 and 6 in block 30; and John A. Buckstaff, lots 5 and 6 in block 29, lots 7, 8, and 9 in block 32, lots 5, 6, 7 and 8 in block 35, lots 1 and 2 in block 36; and Elizabeth Chase, lots 10, 11, and 12 in block 30; and William Rundle, lots 7, 8, 9, 10, and 12 in block 38; and Helen Weber, lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 in block 43; and the said Frank M. Miles duly commenced his action in ejectment in the circuit court of the United States for the district of Nebraska, and such proceedings were had and done in said several actions in said court that on the 3d day of July, 1887, after a due regular trial, a judgment was rendered in said several actions against all the said last named persons and in favor of Frank M. Miles, grantee of the defendant Giles, and among other things said judgment is that the said Miles was seized in fee of all the said premises and the said persons herein last named did unlawfully keep the said Miles out of the possession thereof, which said judgment is now in full force and effect, unreversed and unappealed from, and a complete bar to any pretended claim of title or cause of action herein."

The trial was had in the state court on the 14th day of December, 1887, and a decree rendered for plaintiffs, that part in favor of Rundle being lots 7, 8, 9, 10, 11, and 12 in block 38, in Dawson's addition to South Lincoln, "and all lots or parcels of land hereinbefore mentioned." The case was thereupon brought into this court, where the judgment of the district court was affirmed. Afterwards a further application was made to this court, which is reported in 27 Neb., 179, the title of Rundle to the lots in question being confirmed.

Section 85 of the Code as it existed when the action of

*Little v. Giles et al.* was brought is as follows: " When the
summons has been served, or publication made, the action
is pending, so as to charge third persons with notice of its
pendency, and while pending, no interest can be acquired
by third persons in the subject-matter thereof as against
the plaintiff's title." Miles, therefore, merely stepped in
the shoes of Giles. He acquired no greater rights. The
rule as to purchasers *pendente lite* is thus stated by Black
on Judgments: "It is a general rule that a purchaser of
property (except negotiable paper before maturity) who
buys pending a litigation concerning it, comes into privity
with his vendor, so as to be bound by the judgment in that
suit the same as if made a party of record. We appre-
hend it is well settled that he who purchases property
pending a suit in which the title to it is involved, takes it
subject to the judgment or decree that may be passed in
such suit against the person from whom he purchases.
That he purchased *bona fide* and paid a full consideration
for it will not avail against such judgment or decree. Nor
will he be permitted to prove that he had no notice of the
suit. The law infers that all persons have notice of the
proceedings of courts of record. The law is that he who
intermeddles with property in litigation does it at his
peril, and is as conclusively bound by the results of the
litigation, whatever they may be, as if he had been a party
to it from the outset. It is on this principle that the pur-
chaser of mortgaged premises, taking title after the insti-
tution of a foreclosure suit, is bound by the judgment of
foreclosure rendered against the mortgagor, although such
purchaser is not made a party to the suit. So one who
becomes the purchaser and assignee of a mortgage pending
a suit to set the same aside as void for fraud, thereby comes
into the same position as if he were a co-defendant of
record and hence, in subsequent proceedings between such
purchaser and any of the actual defendants, the judgments
in that suit is conclusive as to the same question of fraud

again arising.   The plaintiff in the action need not make
such purchaser a party or otherwise notice his purchase.
If the latter desires to defend the suit he must make him-
self a party to it in some proper manner, as, in equity, by
supplemental bill, before it terminates.   In a late case it
is said that the purpose of the rule is to keep subject-mat-
ter of the litigation within the power of the court until
the judgment or decree shall be entered, since otherwise,
by successive alienations pending the suit, the judgment or
decree could be rendered abortive and impossible of exe-
cution." (2 Black on Judgments, sec. 550.)

Mr. Freeman, in his valuable work on Judgments, sec.
191, has stated the rule and some of the reasons therefor
with great force and clearness as follows: "Besides the
nominal parties to a judgment or decree, many others are
brought within its influence and made to respect its com-
mands and to abide by its settlements.   Prominent among
these parties are all those persons who have brought them-
selves within the principles involved in the law of *lis pen-
dens.*   The rules applied to third persons becoming inter-
ested in the subject-matter in litigation by acquiring the
title of one of the parties to the controversy, *pendente li'e,*
have been explained and justified upon the assumption
that those rules were based upon notice, actual or con-
structive.   It has been said 'that all people are supposed
to be attentive to what passes in courts of justice,' and that,
from being attentive, they must be informed of the various
matters in process of litigation in those courts.   But the
more reasonable view is that the law of *lis pendens* is not
based upon presumptions of notice, but upon a public policy
imperatively demanded by a necessity which can be met
and overcome in no other manner.   'It is a careless use of
language which has led judges to speak of it (*lis pendens*)
as notice because it happens to have, in some instances, a
similar effect with notice.'   The justice of the court would
be wholly evaded by aliening the lands after subpœna.

served, and the suitor subject to great delay, expense, and inconvenience without any certainty of at last securing his interest. In fact, the doctrine of *lis pendens*, as understood and enforced at common law, does not seem to have required even such constructive notice as would in all cases put a man of ordinary sagacity on his guard, or as would have enabled him to ascertain whether the property in which he desired to acquire an interest was involved in litigation. The commencement of *lis pendens* dated from the service of the subpœna, though it was not returnable until the next term. No *lis pendens* existed until the bill was filed, yet the filing being made, the *lis pendens*, by relation, was considered as in force from the service of the subpœna. Under such a system it might frequently happen that a man would be bound by a suit, whose object he could only conjecture, no means of information being accessible; that every man should be presumed to be present in the courts and attentive to their proceedings, is a most unnatural presumption—a fiction not merely improbable, but impossible, since by no human power can one man be at all times in attendance upon the several tribunals of his country, in which claims to specific property are determined. But the necessity of the rules of *lis pendens* is so apparent and so unavoidable, that the early existence and continued application of these rules were indispensable to a wise public policy. If, during the pendency of any action, at law or in equity, the claim to the property in controversy could be transferred from the parties to the suit so as to pass to a third party unaffected either by the prior proceedings or the subsequent result of the litigation, then all transactions in our courts of justice would, as against men of ordinary forethought, prove mere idle ceremonies. A series of alienations protracted into the boundless future would forever preclude the prevailing party from obtaining that to which he had vindicated his claim. The necessity of *lis pendens* and the perils which

it was designed to avert were thus forcibly stated by Chancellor Kent in a case which is regarded as a pioneer in the United States on the subject on which it treats and which enjoys the distinction of being quoted and approved in every part of our country (*Murray v. Ballou*, 1 Johns. Ch., 566): 'The counsel for the defendants have made loud complaints of the injustice of the rule, but the complaints were not properly addressed to me, for if it is a well settled rule I am bound to apply it, and it is not in my power to dispense with it. I have no doubt the rule will sometimes operate with hardship upon a purchaser without actual notice, but this seems to be one of the cases in which private mischief must yield to general convenience, and most probably the necessity of such a hard application of the rule will not arise in one out of a thousand instances; on the other hand we may be assured the rule would not have existed and have been supported for centuries if it had not been founded in great public utility. Without it, as has been observed in some of the cases, a man upon the service of a subpœna might alienate his land and prevent the justice of the court. Its decrees might be wholly evaded. · In this very case the trustee had been charged with a gross breach of his trust and has been enjoined by the process of the court six months before the sale in question from any further sales. If his subsequent sales are to be held valid, what temptation is held out to waste the trust property and destroy all the hopes and interests of the *cestui que trust?* A suit in chancery is in such cases necessarily tedious and expensive, and years may elapse, as in this case, before the suit can be brought to a final conclusion. If the property is to remain all this time subject to his disposition, in spite of the efforts of the court to prevent it, the rights of that helpless portion of the community whose property is most frequently held in trust will be put in extreme jeopardy. To bring home to every purchaser the charge of actual notice of the suit must from

the very nature of the case be in a great degree imprac-
ticable.'"

The transfer to Miles was made during the continuance
of and in violation of an order of injunction of the district
court.   Under our Code, Miles was charged with notice of
the action and took the conveyance subject to the decision
in the state court of the case of *Little v. Giles*, and as that
was decided adversely to him he is bound by that decree.
The plaintiffs in error have no greater rights than were
possessed by Miles, and have no title to the property in
controversy.   The judgment of the district court is right
and is

AFFIRMED.

THE other judges concur.