## COOPER v. OVERTON.

(*Jackson.* April 12, 1899.)

1. NEGLIGENCE. *Drowning of boy in pond.*

A pond on an unfenced city lot, not being dangerously near a street, the premises of adjoining lot owner, nor possessing any other peculiar features attractive to children than a plank or small raft floating on its surface, and formed, only occasionally, by surface water dammed up by the obstruction of a natural drain by the city authorities, without the agency or knowledge of the owner, who was ignorant of the existence of the pond, although his agents inspected the premises with sufficient frequency, does not constitute negligence, although the pond is situated near numerously attended schools and within a few blocks of a thickly populated district of the city, that will render the owner liable for the drowning of a ten-year-old boy while playing with the plank or raft on the pond. (*Post, pp. 212–240.*)

2. SAME. *Liability of owner of dangerous premises to trespassers defined.*

The liability of the owner of dangerous premises to trespassers does not exist even in the case of children, unless they are induced to enter on the land by something unusual and attractive placed on it by the owner, or with his knowledge permitted to remain thereon. (*Post, p. 237.*)

3. EVIDENCE. *Opinions.*

Opinions of witnesses as to what attracts children to water, or as to whether or not boys like to ride on a plank in the water, are not admissible. (*Post, pp. 239, 240.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

GILLHAM & GILLHAM for Cooper.

TURLEY & WRIGHT for Overton.

WILKES, J.   This is an action for damages for the drowning of Oscar Cooper, the son of plaintiff, Wm. H. Cooper, the father being the administrator of the son.   It is conceded that there is no cause of action against Jno. Overton, trustee, and as to him the action is dismissed.   There was a verdict and judgment for defendant, and an appeal by plaintiff, as administrator, and he has assigned errors.

The facts, so far as necessary to be stated, are that Oscar Cooper, a boy about ten years of age, was drowned by falling from a plank upon which he was attempting to float upon a pond of water upon a lot owned by defendant, Jesse M. Overton, in Memphis, Tenn.   Overton is a resident of Nashville, Tenn., and is the owner and in possession of lots Nos. 48 to 53 of block 24, in the tenth ward of Memphis.   These lots front about 148⅓ feet on the east line, and about 400 feet on the north line of Clay Street.   They had descended to him from his grandfather.   They were unimproved, unfenced, and uninclosed.   The property had no other than natural drainage.   The lot adjoining these lots is separated from them by a fence, and on it there is a house, about 150 feet from the line of the lots. There are no other houses in the immediate vicinity of these lots, but they are located within a few blocks of a somewhat thickly populated part of the

city. About 450 feet northwest of these lots is a public school building, usually attended by about 370 pupils, and there is a Catholic parish school a few blocks south. This property was looked after by Overton & Overton, real estate agents, for the owner, Jesse M., who rarely visited Memphis. Surface water from contiguous property flowed across these lots, and gradually cut a gully of several feet deep, through which it found vent. The city, it appears without the knowledge of the owner or his agent, filled up the lower end of this drain by dumping trash and dirt into it, so as to form a dam and cause a pond of water to form or accumulate on the lot. The edge of this pond was about 50 feet from a sidewalk on Lee Street, and 150 feet from the sidewalk on Clay Street. It appears from the statements in the record that Overton & Overton, agents, were in the habit of inspecting the premises about twice a month, and when last inspected there was no pond upon them, and it is further stated that they had no knowledge there was a pond upon the lot until after the drowning, which occurred January 10, 1899.

It further appears that the pond would form after a heavy rain, and in a short time would dry up and disappear, and at this time there had been a heavy rain for two days. When notified of the accident, Mr. Overton went to the city authorities and complained of their action in stopping the drain, and the city at once removed the dam and filled

up the pond. On both sides of this property defendant, Overton, had caused sidewalks to be laid, and the pond was about fifty feet from the nearest point of the sidewalk. There appears also to have been a path or walkway across the lot, which was used by a few persons as a cut-off instead of going around the sidewalks, but the public was not in the habit of using it. Its nearest point to the pond was about twenty-five feet. It does not appear that the owner or his agent had ever given any permission to the public to use a pathway across their lots or that they knew of such use.

The deceased was a pupil in the public school, and is shown to have been a boy of average intelligence. It appears that the school children had been playing in a bayou which crossed these lots. They had been forbidden (and the intestate with the others) from going on these lots by the principal, and, as a rule, these instructions had been obeyed. The deceased, however, with another boy, John Appling, aged about eleven years, and a younger brother of the latter, went over this lot from the sidewalk, about fifty feet to the edge of the pond. A piece of the plank sidewalk had been torn up and thrown on the water of the pond, by whom does not appear, and appears to have been the only one on the surface of the water. Oscar Cooper got upon this plank and attempted to propel it around the pond over the water with a stick. He lost his balance and fell off the plank into deep

water and was drowned. It appears that the two Appling boys declined to get on the plank (deeming it dangerous), though invited to do so by young Cooper. It appears that other children had been playing at or in this pond, sometimes bathing and swimming, but whether school children or not does not appear. It is not shown that the pond had any special attraction for boys, but some testimony tending in that direction was excluded, and forms the basis of a part of the assignments.

There was no danger to anyone on or using the sidewalks. There is testimony tending to show that there was no pond there in the summer, and that it was only formed by heavy rainfalls and would soon dry up. When the pond was full it would extend up to and under the sidewalk of Clay Street, but was shallow at that point and generally around the margin of the pond.

Various assignments of error are made, principally to the failure of the trial Judge to give certain requests asked by plaintiff's counsel and to the charge as given by him. The first and second assignments will be treated together, and are refusals to charge as follows:

"1. The Court instructs you that it is the duty of all owners of property situated in the city, or where many people live or travel, to take such reasonable care of the same as will render it reasonably safe to the public.

"2. It is the duty of all such property owners

to abate any dangerous nuisance which may arise on their premises, and it is his duty to look after his property, and if a nuisance has existed for a considerable time he is in law presumed to know it, and then it becomes his duty to abate it."

Without stopping to comment on these requests, which we think are too general and meager in terms, we think the trial Judge in his general charge more correctly stated the law applicable to the facts of this case and in much better language, as follows: "An actionable nuisance is anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal right. This necessarily carries you to determining what Oscar Cooper's legal rights were. He had a legal right to pass over and along either Clay or Lea Street in safety. These were the streets that bounded the lots upon which it is claimed the pond was. Defendant, Overton, had no right to construct, maintain, or permit a pond upon his lots so near to the streets which bounded the lots as to make it dangerous to persons who were using the streets. So, if you find from the evidence that the pond was so near to the streets which bounded the lots as to endanger anyone who was using the streets, and, as a consequence thereof, Oscar Cooper was drowned, then the plaintiff can recover."

The third assignment is that the trial Judge refused to charge a request, as follows: "If a pond should form upon the vacant property of the owner, situated in the populous districts of a city, and near

streets or public schools where many children at-
tend, and which pond is deep enough to drown a
child, it is the duty of the owner to abate the
nuisance, to drain or fill up the pond." This as-
signment will be considered with the fourth and
fifth, which raise the question of the correctness of
the trial Judge's charge, as a whole, upon the du-
ties of the landowner and the rights of the public.

The Judge charged as follows: "The pleading of
defendant, Overton, puts upon plaintiff, Cooper, the
burden of making out his case upon every material
point by a preponderance of the evidence. The
material points upon which the evidence must pre-
ponderate before it authorizes the jury to give plain-
tiff a verdict are the following: (1) he must estab-
lish the fact that a pond was maintained or per-
mitted to exist upon defendant's lots; (2) that the
manner or condition in which it was maintained or
permitted to exist was negligence in itself; (3) that
it was because of its condition, or the negligent
manner in which it was maintained or permitted, that
Oscar Cooper was attracted to it and was drowned.
Unless these three points are established by a pre-
ponderance of the evidence there can be no recovery.
An actionable nuisance is anything wrongfully done
or permitted which injures or annoys another in the
enjoyment of his legal rights. This necessarily car-
ries you to determining what Oscar Cooper's legal
rights were. He had a legal right to pass over
and along either Lea or Clay Streets in safety.

These were the streets that bounded the lots upon which it is claimed the pond was. Defendant, Overton, had no right to construct, maintain, or permit a pond upon his lots so near to the streets which bounded the lots as to make it dangerous to persons who were using the streets. So that, if you find, from the evidence, that the pond was so near to the street that it endangered anyone who might be using the street, and, as a consequence thereof, Oscar Cooper was drowned, the plaintiff can recover. On the other hand, if you find from the evidence that Oscar Cooper had to leave the sidewalk and go over on the private property of Overton, thirty feet or ·more, before he came to a place of danger in the pond, then there can be no recovery in this case from the bare fact of maintaining or permitting a pond to remain on the lot, for the reason that every owner of real estate has the right to use his property just as he pleases, so long as the use which he makes of it does not endanger anyone else in the enjoyment of their legal rights; and if any owner of real estate has a right to use his property just as he pleases, you can see that such owner has the right, if he so desires, to dig a pond on his lot. The only restriction· which the law imposes upon this right is this, that the owner, in digging the pond, must see to it that he does not put it near enough to an adjoining lot owner to endanger the use of his property, and that he does not dig it near enough to a public street to

Cooper *v.* Overton.

make it dangerous to persons using the street. When the lot owner has observed these precautions in digging or maintaining a pond on his lot, he has complied with the law, and no one can legally complain; if he has not observed the precautions just mentioned, and injury results to anyone as a consequence of the owner's failing to observe them, the injured person can recover.''

It will be noted that neither in the charge nor the requests is the idea prominently presented that this pond was or might be a place attractive to children, but the requests are based upon the idea that there is an obligation resting on the landowner to keep his premises near a public school or highway free from dangers which arise from natural or artificial causes. This feature of attractiveness of the pond was made prominent in the declaration, and some proof was attempted to be introduced upon it, but was rejected so far as based on opinion. It is, however, pressed in argument, and will be considered along with the other features of the case.

As to this feature of attractiveness, the record presents the following state of facts: Miss Conway, the principal of the school, testifies that some boys had been reported to her as having skated on ice over Overton's lots, and she had forbidden the little boys from going to the bayou to play, because they would get their feet muddy. She had never known that the children of the school had been in the habit of playing on it.

Wall, the janitor, says he has seen children come into school and had to strip them; that they had fallen in and come out, but that he did not know of any of the school children playing there except from hearsay; that he had to run some children out who were swimming there, but not at the time of the year (February) when this drowning occurred. He had seen some children playing on some planks in the pond, but when this was is not stated. His evidence is largely, if not altogether, hearsay, and is not at all definite.

The case has been very elaborately and ably argued by learned counsel, and we have been furnished with exhaustive printed briefs on each side, and very full citation of authorities. The plaintiff insists that the merits of the controversy are embodied in his third request, and he specially relies upon several cases which we will notice.

The first is the case of *Pekin* v. *McMahon*, 154 Ill., 141 (S. C., 27 L. R. A., 206; 39 N. E. Rep., 484, and 45 Am. St. Rep., 114). In that case the Court says: "There is a conflict in the decisions upon this subject, some Courts holding in favor of the liability of the owner, and others ruling against it." It then proceeds to lay down the rule as follows: "When the land of a private owner is in a thickly settled portion of the city, adjacent to a public street or alley, and he has upon it, or suffers to be upon it, dangerous machinery or a dangerous pit or pond of water, or any other dangerous

Cooper *v.* Overton.

agency, at a point thereon near such public street or alley, of such a character as to be attractive to children of tender years incapable of exercising ordinary care, and he is aware or has notice of its attractions for children of that class, we think that he is under obligations to use reasonable care to protect them from injury when coming upon such premises, even though they may be technical trespassers.''

And, again, the case quotes with approval the statement made in Shearman & Redfield on Negligence, as follows: ''The owner of land where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in safe condition, for they, being without judgment, and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers, and mere licensees.'' Citing 2 Shearman & Redfield on Negligence, 4th Ed., Sec. 705; 4 Am. & Eng. Enc. L., p. 53 and notes. In such case the owner would reasonably anticipate the injury which had happened. 1 Thompson on Negligence, 304.

In the Pekin case there was a pond or pit of water, five to fourteen feet deep, in a populous city, on lots belonging to the city and filled with logs and timber floating therein, on which children were in the habit of playing, near a driveway across vacant lots, but partially inclosed, and the city had been notified that it was dangerous, and requested to remove it,

but had allowed it to remain a year until a boy
eight and one-half years of age went through an
opening on the causeway, stepped on a log in the
water, which rolled and threw him into the water.

The case of *Price* v. *Atchison Water Co.*, 58
Kan., 551 (S. C., 62 Am. St. Rep., 625), is also
relied on by plaintiff. In that case a landlord main-
tained on his premises a reservoir filled with water,
to which children were attracted for fishing and other
sports, which was well known to the landlord, and
who took no means to warn them or exclude them,
and a child eleven years of age was attracted to the
place and fell in and was drowned, and it was held
the landlord was liable. The case turned upon the
allurement and enticement held out to children, and
the knowledge of the owner of its danger, and that
children did frequent it habitually. To the same
effect are cited *Brinkly Car Co.* v. *Cooper*, 60 Ark.,
545 (S. C., 46 Am. St. Rep., 216), and a number
of other cases, more or less in point, and holding
the same general doctrine.

On the other hand, counsel for defendants call
the attention of the Court to a number of well-
considered cases, more or less in conflict with the
cases cited for plaintiff, only a few of which we
refer to as illustrating defendants' contention.

The case of *Richards* v. *Conwell*, 45 Neb., 467,
is where a demurrer was sustained to a petition
which set out facts almost identical with the facts
in the present case. The statements in the petition

were that "on the twenty-ninth day of June, 1891, and for a long time prior thereto, the defendant was the owner of lots 40 and 41 in the city of Omaha, and the plaintiff's father was, during said time, the owner of the adjoining premises, described as lot 59; that defendants had, for a long time prior to the date named, negligently permitted the surface water to accumulate on said lots, thereby creating a deep and dangerous pond; that they had failed and neglected to fence said lot, or to erect barriers of any kind to prevent children, lawfully in the vicinity thereof, from falling into said pond; that said lots are situated in the vicinity of one of the public schools of said city, and the pond is not only dangerous to persons passing along South Street adjacent thereto, but is situated in a public and much frequented place, and attractive to children of tender age, many of whom are accustomed to play about and upon the water; that on June 29, 1891, plaintiff's intestate, a boy ten years of age, yielding to the natural impulses of childhood, went on said pond upon a section of wooden sidewalk floating thereon, from which he fell into said pond and was drowned."

The Court, in passing on the demurrer, said: "The petition, we think, fails to state a cause of action against the defendant; the demurrer was, therefore, rightly sustained. The single question presented by the record is whether the owner of a vacant lot, upon which is situated a pond of water

or dangerous excavation, is required to fence it, or otherwise insure the safety of strangers, old or young, who may go upon said premises, not by his invitation, expressed or implied, but for purposes of amusement or from motives of curiosity. The authorities we find to be in substantial accord, and sustain the proposition that, independent of statute, no such duty exists.''

The case of *Klicks* v. *Nieman*, 68 Wis., 273, is very similar to the one at bar. That case was also decided on demurrer, and the Court said: '' We think the demurrer in this case was properly sustained, for the reason that the complaint shows no actionable negligence on the part of the defendant. The complainant states that the defendant was the owner of and in the possession of a lot in the city of Milwaukee, situated on the northeast corner of Hubbard and Loyd Streets; that the lot was in a thickly populated part of the city, and was not inclosed by a fence between it and Hubbard Street or on the side between it and Loyd Street, but that the lot was vacant and open, so that the public had free and unrestricted access thereto from both Hubbard and Loyd Streets; that for a long time prior to September 5, 1885, there had been upon the lot a deep and dangerous hole or excavation, partially filled with water, making a pond which covered about the entire surface; that the water of the pond was oily, so that its depth could not be ascertained only by measurement, but that in places it was of the depth

Cooper *v.* Overton.

of nine feet, so that the pond was dangerous to the lives of children who might be attracted thereto for amusement or otherwise; that the defendant, well knowing the pond was dangerous to the lives of children residing in the vicinity of the same, wrongfully, negligently, and carelessly permitted it to remain unguarded by fence or barricade, and the plaintiff's son, a lad of nine years of age, while playing upon or about said pond of water, being induced thereto by reason of the unguarded and unprotected condition of said pond, fell, or was precipitated, into the same, and was drowned. It will be observed,'' says the Court, ''that it was not alleged that the pond was so near the highway as to make it unsafe for persons going along the street or sidewalk, and no averment that the boy, when he fell into the pond, was passing along the street or sidewalk. On the contrary, it is stated that the boy was playing upon and around the pond when he was precipitated into the water and drowned. So, the single question presented is, was it the duty of the defendant to fence or guard this hole or excavation on his lot, which it does not appear he made or caused to be made, where surface water collected, in order to secure the safety of strangers, young or old, who might go upon it or about the pond for play or curiosity? If the defendant was bound to fence or guard the pond, upon what principle or ground does this obligation exist? There can be no liability unless it was his duty to fence

the pond. It surely is not the duty of an owner to guard or fence every dangerous hole or pond or stream of water on his premises for the protection of persons going upon his land who have no right to go there. No such rule of law is laid down in the books, and it would be most unreasonable to so hold. A learned authority states the doctrine in these words: 'An owner of land is under no obligation to fence an excavation on his land unless it is so near the highway as to amount to a public nuisance, and if persons or animals are killed or injured in consequence of his failure to do so, no damages can be recovered.'

"The qualification of this rule is that when the owner of land, expressly or by implication, invites a person to come upon it, he will 'be liable for damages if he permit anything in the nature of a snare to exist thereon which results in injury to such person, the latter being at the time in the exercise of ordinary care. If, however, he gives a bare license or permission to cross his premises, the licensee takes the risk of accident in using the premises in the condition in which they are. Quoting from 1 Thompson on Negligence, 361: 'Among other authorities cited by the administrator to sustain this doctrine, is *Hardcastle* v. *Railroad*, 4 Hurl. & Nor., 67, where Pollock, C. B., uses this language: "When an excavation is made adjoining a public highway, so that a person walking upon it might, by making a false step, or being affected

with sudden giddiness, or in the case of a horse or carriage that might, by a sudden starting of the horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences. But when the excavation is made at some distance from the highway, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to be different. We do not see where the liability is to stop. A man getting off the road on a dark night and losing his way may wander to any extent. And if the question be for the jury, no one could tell whether he was liable for the consequences of his act upon his own land or not.'"

In Shearman & Redfield on Negligence (5th Ed.), sec. 705, it is said: "The owner of land where children are allowed or accustomed to play, must use ordinary care to keep it in a safe condition. And, yet, merely allowing children to play upon a vacant lot is held not to amount to an invitation which creates liability for its condition." Citing a large number of cases, and among them *Moran* v. *Pullman Co.*, 134 Mo., 641 (S. C., 33 L. R. A., 755). In the syllabus of this case this language is used: "The owner of a lot in a city who failed to fence the same is not liable in damages for the death of a boy who entered upon the premises without invitation or permission, and was drowned while bathing in a pond on the lot." There was a judgment in favor of the defendant in this case, just as in the case

at bar, and the same argument was made by counsel for appellants in that case as is made here. Thus, on page 642 we find appellant's counsel making this contention: First, the owner of the property having thereon any dangerous agency which is attractive to children, or where he has knowledge that they resort to it for amusement or otherwise, and fails · to use ordinary care, under the circumstances, to guard the same against injury, must respond in damages for such neglect, irrespective of the fact that the danger is not adjacent to the highway. Quoting *Pekin* v. *McMahon*, 15 Ill., 141; *McKie* v. *Vicksburg*, 64 Miss., 777; also 81 Ky., 638, and a long list of authorities cited by opposing counsel in case at bar.

The opinion in the late Missouri case, however, after stating the facts, which are much more favorable to the plaintiff than the facts in the · case at bar, since the pond is shown to have been only twenty feet away from a public street and in a populous part of the city, uses this language: "The views expressed in *Overholt* v. *Bieths* are applicable to the case at bar, and are not rendered inapplicable by the fact that the child entered on the premises where he was drowned through adjoining private property. The same principle applies, whether the unauthorized entry be made on private grounds as where a public street is used for the like purpose." Overholt's case has been recently and approvingly cited and followed in the quite recent cases of *Witte* v. *Stifel*, 126 Mo., 295, and *Barney* v. *Railroad*,

126 Mo., 372; 26 L. R. A., 847. Having fully
discussed in these cases the subject here involved, it
is needless to go over the same ground again.
Abundant authorities, in addition to those just men-
tioned, have been collected by the industry of coun-
sel, which as fully maintain these views as those
already mentioned.

The case of *Richards* v. *Connell* was decided last
year by the Supreme Court of Nebraska. The facts
in that case are almost identical with those in this
case. The action there, as here, was against the city
of Omaha and the owners of certain uninclosed lots
of ground. The petition there alleged that defend-
ants had, for a long time prior to the death by
drowning of a boy of about ten years of age, per-
mitted the surface water to accumulate on the lots,
thereby creating a deep and dangerous pond, and
that defendants had failed and neglected to fence
the lots or erect any barrier to prevent children,
lawfully in the vicinity, from falling into the pond;
that the lots were in the vicinity of a public
school, and adjacent to a street, and in a place
much frequented and attractive to children of tender
years, who were accustomed to play about and upon
the water. The boy was playing upon a raft float-
ing upon the water, and fell in and was drowned.
The case also approvingly cites and follows the
Overholt case, 93 Mo., and distinguishes the facts
treated in that case from what is commonly known
as the turntable cases. To the like effect see *Rutte*

v. *Dawson*, 52 N. W. Rep., 565; 91 Mich., 59;
*Murphy* v. *Brooklyn*, 118 N. Y., 575; *Clark* v.
*Manchester*, 52 N. H., 577; *Frost* v. *Railroad*, 9
Atl. Rep., 790; *O'Connor* v. *Railroad*, 44 La. Ann.,
339; *Benson* v. *Railroad*, 26 Atl. Rep., 973; *Clark*
v. *Richmond*, 83 Va., 355, and other cases.

The case of *Witte* v. *Stifel*, 126 Mo., 295, holds
as follows: "The owner of a building in process
of construction in a city is not liable for injuries
to a child playing thereat without his knowledge,
and without any inducement or invitation, implied
or otherwise, on his part to a child to go upon the
premises. Plaintiff's son, seven years of age, went
to one of the cellar windows of a building in
process of construction in the city of St. Louis,
which was about three feet from the street line,
and sought to draw himself up by taking hold of
a stone placed across the top of the window frame.
The stone was not fastened, and fell and killed him.
It did not appear that the owner of the building,
a contractor, knew of the dangerous position of the
stone, or that children were in the habit of play-
ing around the building. Held, that deceased was a
trespasser, and that no inducement or invitation, im-
plied or otherwise, having been held out to him to
enter upon the premises, there could be no recovery
for his death."

In the case of *Murphy* v. *City of Brooklyn*, 118
N. Y., 575, this language is used: "This action
was brought to recover damages for the death of

Cooper *v.* Overton.

plaintiff's intestate, a boy six years old, who was found drowned in a hole alongside a sewer constructed by defendant through private property and then into the street, with the consent of the owner. It appeared that the sewer emptied into the bay. At high tide the sewerage was driven back up the sewer, causing the cavity in question. This was about fifty feet from one of defendant's streets, along which, forming the boundary of the adjoining premises, was an embankment faced by a wall, and on the top of this a fence or railing of posts and crossbars. At a point where it was supposed the plaintiff's intestate went upon the premises a crossbar was down—the wall had given way. People going to the bay had occasionally crossed there, and the ground for ten or twelve feet from the fence had the appearance of a path. It did not appear that any objection had been made by any person to the construction and maintenance of the sewer. Held, that no violation of any duty which the defendant owed to the deceased had been shown, and so it was not liable. The construction of the sewer was not wrongful, nor was its maintenance a nuisance; the defendant owed to him no duty of care to protect him while upon the premises, or to guard the hole, as it was not so close to the street as to make the latter unsafe; it seems that the owner of the premises could not have been charged with negligence in permitting the hole to remain, distinguishing *Beck* v. *Carter*, 68 N. Y., 283; quoting

with approval *Hargraves* v. *Deacon*, *Blythe* v. *Top-ham*, *Hardcastle* v. *Railroad*, and many other authorities."

In the case of *Hargraves* v. *Deacon*, 25 Mich., 1, the rule is laid down as follows: "Owners of private property are not responsible for injuries caused by leaving a dangerous place unguarded, when the person injured was not on the premises by permission or on business or other lawfu occasion, and had no right to be there. Where an injury arises to a person from the neglect of one doing his lawful business in a lawful way, to provide against accident, the question arises at once whether he was under any obligation to look out for the protection of that particular person under the particular circumstances of the case, for the law does not require vigilance in all cases, or in behalf of all persons. If on the sidewalk, the duty of protection extends to all persons who have a legal right to go there; or, in other words, to the whole public, and it depends upon that right. On private property, not open of right to the public, it applies less generally, and only to those who have a legal right to go there and claim the care of the occupant for their security while on the premises against negligence, or to those who are directly injured by some positive act involving more than passive negligence. We have found no cases which hold that an accident from negligence on private premises can be made a ground of damages, unless the party injured

had been induced to come by invitation, or by employment which brings them there, or by resorting there as to a place of business, or a general resort held out as open to customers or others, when lawful occasion may lead them to visit there. We have found no support for any rule which would protect those who go where they are not invited, but merely from motives of convenience in no way connected with business or other relations with the occupant." In that case a little child of tender years had strayed upon the property of defendants, and had fallen into a pond which was open and unguarded.

In *Ratte* v. *Dawson*, 50 Minn., 450, this language is used: "Where a child of tender years was taken by an older sister, to whose care it was intrusted, to a vacant lot in a city for recreation and pleasure, and was accidentally knocked down and killed by the caving in of an embankment caused by excavations for sand, and which had been left unfenced, it was held that the landowner was not liable in damages, and that he owed no duty to persons coming upon the premises without his invitation to protect them from danger from excavations therein." The Court uses this language: "There is nothing to take the case out of the general rule that where the owner of land, in the exercise of his lawful dominion over it, makes an excavation therein so far from the street that a person coming on to the land without his invitation, and falling into it, would be a tres-

passer before reaching it, such owner is not liable
in an action for injuries sustained. There was noth-
ing in the nature of the excavation, or anything kept
or used there, which can be said to have been
specially inviting or attractive to children, or calcu-
lated to entrap them into danger, so as to bring
the case under the rule established in the turntable
cases. The maxim 'sic utere tuo' has no applica-
tion to such a case; it refers to acts the effect of
which extend beyond the limits of the property,
and to neighbors who do not interfere with or enter
upon it. If the rule were otherwise, the landowner
could not sink a well, or dig a ditch, or open · a
stone quarry on his land, except at risk of being
made liable for the consequential damages, which
would unreasonably restrict its enjoyment."

In *Peters* v. *Bowman*, 115 Cal., 345 (S. C., 56
Am. St. Rep., 106), we have a case very similar
to the one at bar: "Plaintiff brought an action for
damages for the death of his infant son drowned in
a pond of water upon a lot owned by the defend-
ant. The water used to run over the lot until the
street was graded by the city of San Francisco on
the side towards which the land sloped, since which
time the water accumulated in the rainy seasons,
forming a pond which disappeared during the dry
season. The boy was drowned while playing on a
raft that was floating in the pond, and was eleven
years of age. The general rule is that the owner
of land is under no obligation to keep his premises

safe for trespassers, whether children or adults, and governs this case.''

The rule of turntable cases is not applicable. That rule is approved in that State (see 91 Cal., 296), but should not be carried beyond the class of cases to which it has been applied. It has been repeatedly held that damages cannot be recovered for the death of a child drowned in a pond on private premises who had gone there without invitation, quoting *Klicks* v. *Nieman*, 68 Wis., 271; *Overholt* v. *Bieths*, 93 Mo., 422; *Hargraves* v. *Deacon*, 25 Mich., 1; *Gillespie* v. *McGowan*, 100 Pa. St., 144; *Richards* v. *Connell*, 45 Neb., 467.

In response to a petition to rehear, the Court entered very fully into the distinction between the case and the turntable cases, and showed to what absurdities the doctrine that the landowner is liable for injuries to children who are attracted on to his premises, by instancing the case of the death of a child who, attracted by the tempting fruit, climbs into a tree and falls and is killed.

The Court says: '' With respect to danger especially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different from where the danger exists naturally and arises from natural causes. It distinguishes the Illinois case of *Pekin* v. *McMahon*, *supra*, by showing that it was one where the city had made the dangerous excavation in a thickly peopled quarter,

while in the case under consideration the pond on
the owner's land [as in this case] was created by
the city without any fault on his part [and in this
case without defendant's knowledge]."

There is a late case decided by the Supreme
Court of Minnesota, in July, 1898, which is directly
in point. This is the case of *Dehanetz* v. *City of
St. Paul*, quoted in 4 Am. Neg. Repts., 655. The
syllabus .is as follows: "Within the limits of the
city of St. Paul, and between the banks of the
Mississippi, is a slough more than a quarter of a
mile in length, which, during high water, fills with
water, and has no outlet. In this slough is an
open basin from sixty to seventy feet across, which
is contiguous to James Street. For a long time the
city of St. Paul has used this hollow basin as a
place for dumping garbage, and during high water
it floats upon the water, and forms a crust, upon
which grows vegetation similar to that upon the sur-
rounding land. The plaintiff's intestate, a girl ten
years old, left James Street, upon which she had
been traveling, and, either for convenience or pleas-
ure, attempted to cross over this crust. From the
facts, it did not appear that the public had ever
traveled over this dumping ground or used it as an
open common. Held, that the city owed no duty
of protection or warning to those going over this
dumping ground or crust, and, hence, was not lia-
ble for her death."

The opinion in this case concludes as follows:

"However sad may be the untimely death of this young girl, yet, under the facts and well-settled rules of law, the order denying the defendant's motion for a new trial must be overruled. We have not deemed it necessary to discuss the authorities cited by either counsel, as the facts clearly demand a reversal of the order. It is sufficient to say that the rule laid down in the well-known turntable cases has no application to the case at bar."

It will be seen that the authorities cited are in direct conflict upon what may be said to be the real issue in this case, but we hold, upon reason and weight of authority, that liability does not exist even in the case of children, unless they are induced to enter upon the land by something unusual and attractive placed upon it by the owner, or with his knowledge, permitted to remain there, and this is the doctrine of the turntable cases. Further than this the facts in this case do not warrant us in going.

In the case at bar the proof wholly fails to show that the owner of this property caused the water to stand upon this lot in a pond, but this was done by the city. It wholly fails to show that the owner, or his agents, did anything to render the pond attractive, or that they placed any planks upon it, and the proof does show affirmatively that the owner did not know of the existence of the pond, or its dangerous character, and that he also, through his agents, looked after the property with as much diligence as should be required. It is impossible, there-

fore, upon any theory of the case, to find a ground of liability of the defendant. The leading cases relied on by plaintiff, cited above, have, as an important and essential feature fixing liability, the creation of the danger or actual knowledge of it by the owner, neither of which features exist in this case.

In *LaGrill* v. *Clapp*, decided at the present term, it was held that if the premises were rendered dangerous by the acts of a third person, and the owner had no knowledge of it and could not have known it by proper diligence, the owner would not be liable for injuries from the defects.

We have treated the case as though the special requests were made as the rule requires, but the record shows they were made before the main charge was delivered, and hence, under our rule, they could not be held as properly made. Still, the entire question is raised by objection to the charge as given, and we have used the requests the more plainly to define the plaintiff's contention.

There are various errors assigned in the record, but not argued before the Court, which we dispose of briefly. The testimony of Miss Conway was objected to so far as it sought to have her state the age of the children in school under her charge. The exception to this testimony is not properly made. The record fails to show how much of her examination, made in the absence of the jury, was read to them after they returned, and it fails to show that any exception was taken to the action of the trial

Judge upon the final disposition of this matter, and as to this feature the record is confused. In the view we have taken of the case, the evidence is immaterial.

It was not error to exclude the testimony of the same witness as to her opinion of what attracted the children to the water, nor Jno. Appling's opinion as to whether boys like to ride on, a plank in the water. The Court rejected the testimony because it called for opinions merely, and there was no exception to the ruling, and what the answer would have been does not appear. Mr. Wall was asked if he found in his experience that this pond, with planks in it, was an attractive place for children. This was objected to by counsel for defendant, and there was no answer nor ruling by the Court. It was, moreover, but an expression of opinion. As the eleventh assignment, it called for a statement which the witness showed could only be given from hearsay, and it was properly excluded.

It is said the Court excluded all the evidence tending to show that the pond was attractive to children. This is too general. It does not point out specific questions asked and answers given, and does not attempt to do so. We have already referred to several questions, and the action of the Court thereon, bearing upon the question generally, but we cannot, on this general objection, look through the record to find what is referred to. But upon an examination of the whole record, we are satisfied

that nothing material to the real issue in the case was excluded. The ground of liability, if any existed at all, was that the pond was an attractive place for children. Witnesses were not allowed to give their opinions as to this feature, but they were allowed to state the situation of the pond, its size, character and appearance, and what was on it to make it attractive and different from any other sheet or collection of water, and any facts from which the jury might have inferred and concluded that it was or was not attractive. The Court did not specifically charge, upon this feature, whether the pond was attractive or not, and was not asked to do so, probably because the proof did not call for it, as the only evidence of attractiveness was that a plank was floating on the surface of the water; but how long it had been there, or by whom it was placed there, did not appear, and it was affirmatively shown that the defendant had no knowledge of the plank or the pond itself.

We find no reversible error in the record, and the judgment of the Court below is affirmed with costs.